IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| John L. J. Long, | ) | No. CV 11-0686-TUC-FRZ (CRP) |
| Petitioner, | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| vs. | ) | |
| | ) | |
| Charles L. Ryan, et al., | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, confined in the Arizona State Prison Complex, Tucson, and proceeding *pro se*, has filed a Petition Under 28 U.S.C. § 2254 For A Writ of Habeas Corpus By A Person In State Custody (Non-Death Penalty). (Doc. 1). Respondents have filed an Answer (Doc. 11) and Petitioner has filed a Reply (Doc. 13). Pursuant to the Rules of Practice of this Court, this matter was referred to the Magistrate Judge for a Report and Recommendation. LR Civ 72.1. After considering the briefing, exhibits and relevant law, the Magistrate Judge recommends that the District Court, after its independent review, deny the Petition.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Petitioner's Guilty Plea and Sentence

On September 24, 2007, Petitioner entered guilty pleas in two cases in Pima County Superior Court. In Case No. CR-20060509, Petitioner pleaded guilty to armed robbery (Count Two), theft of means of transportation (Count Four), and two counts of robbery (Counts Six and Seventeen); and in Case No. CR-20061002, he pleaded guilty to two counts

of armed robbery (Amended Counts One and Three). (Doc. 11, Ex. A; *see* Petitioner's plea agreements at Ex. D's Ex. 2 & 3).[1] Defense counsel set forth on the record at the guilty plea hearing the circumstances of Petitioner's offense conduct, noting that his criminal activity occurred in Pima County within about a week's time frame in January 2006. (Ex. D's Ex. 1 at 17-19). Based on the factual bases described in the plea transcript and information in Petitioner's presentence report, the circumstance of Petitioners criminal activity includes the following. On January 23, 2006, Petitioner was driving with a female friend in her pickup truck and took off in the truck when she exited the vehicle, depriving her of her truck. (Ex. D's Ex. 1 at 18). On January 24, 2006, Petitioner took the victim's wallet by force while at a gas station. (*Id*.). During this gas station incident, Petitioner pulled out a handgun and chambered a round. (Ex. D's Ex. 5 at 2). On January 25, 2006, Petitioner while armed with a deadly weapon took money by force from a store clerk at a convenience store. (Ex. D's Ex. 1 at 18-19). On January 27, 2006, Petitioner while at a restaurant's drive-through window took money by force from an employee who observed a handgun on Petitioner's waist. (Ex. D's Ex. 1 at 18 & Ex. 5 at 1). On January 28, 2006, Petitioner confronted a security guard at gunpoint and took her vehicle. (Ex. D's Ex. 1 at 17). On January 29, 2006, Petitioner took a vehicle owned by another by force. (*Id*. at 18). Just prior to his arrest involving this incident, Petitioner tossed an air gun out of the vehicle during his pursuit. (Ex. D's Ex. 5 at 2). At the sentencing hearing, the prosecutor stated that in several of the crimes Petitioner used the pickup truck he initially stole before stealing the second vehicle. (Ex. L at 6-7).

On November 7, 2007, Petitioner was sentenced to the presumptive prison term of 10.5 years on the armed robbery conviction in CR-20060509 (Count Two) and to a presumptive enhanced prison term of 11.25 years on the theft of means of transportation

---

[1] Relevant portions of the state court record are attached as Exhibits A through M to Respondents' Answer. (Doc. 11). Unless otherwise noted, the Court has cited to the state court record by exhibit number without the corresponding docket number assigned to Respondents' Answer.

conviction in CR-20060509 (Count Four), both terms to run consecutively.  (Ex. B). Sentences imposed on the other counts of conviction were ordered to run concurrently to the two consecutive sentences.  (*Id*.).

**B.     Petitioner's State Post-Conviction Proceedings**

On December 26, 2007, Petitioner proceeding *pro se* filed a Notice of Post-Conviction Relief (PCR notice) pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  (Ex. C).  On October 30, 2008, Petitioner, represented by appointed counsel, filed a Petition for Post-Conviction Relief (PCR petition) asserting the following claims for relief:

(1)     Counsel provided ineffective assistance by failing to properly investigate and present available mitigation at sentencing which included that Petitioner's father, grandmother and mother suddenly died when Petitioner was quite young (age 6, 13, and 16) and that their deaths had a great impact on him;

(2)     Counsel provided ineffective assistance by failing to present evidence in mitigation suggesting that Petitioner may have suffered from a psychological break of some type at the time of the alleged crime spree in which Petitioner believed that he was "possessed by demons" and going to hell after taking drugs following his treatment at a Christian Drug Rehabilitation Center leading to a sense of despair and rebellion;

(3)     Counsel provided ineffective assistance in failing to properly investigate and present readily available mitigation related to Petitioner's falling on a period of misfortune immediately prior to the crime spree when he lost a good job at a lumber yard he had obtained following his release from prison due to an automobile accident in which he required surgery to reconstruct his wrist and was subsequently denied disability benefits;

(4)     Counsel provided ineffective assistance in failing to point out to the sentencing court that the weapon involved in the offenses was an air pistol that merely looked like a firearm, or in failing to provide appropriate guidance to the court regarding appropriate legal considerations for imposing consecutive sentences as to Counts 2 and 4 in CR-20060509;

(5)     The sentencing court may have erred in sentencing Petitioner to consecutive

1  sentences because it failed to follow applicable law under *State v. Garza*, 962 P.2d 898 (Ariz.

2  1998); and

3          (6)     The sentencing court may have erred (a) by considering erroneous information

4  concerning the existence of an actual firearm used during the crime spree in violation of

5  Petitioner's due process rights; (b) by not conducting an adequate investigation for

6  sentencing purposes through consideration of an earlier Presentence Report in CR2003-1765

7  and CR2003-2559 that contained vital information, and (c) by improperly weighing available

8  mitigation and aggravation.  (Ex. D at 9-11, 16, 26-27, 30-32).

9          An evidentiary hearing was held on June 16, 2009 on Petitioner's PCR petition.  (Ex.

10  E & M).  The state court found that Petitioner had not proven ineffective assistance by

11  counsel or prejudicial sentencing error and denied post-conviction relief. (Ex. F).[2] Petitioner

12  presented all of  his claims in a petition for review filed in the Arizona Court of Appeals.

13  (Ex. G).  The state appellate court granted review, adopted the trial court's "thorough, well-

14  reasoned minute entry," and denied relief.  (Ex. H).  Petitioner sought review of  his claims

15  in the Arizona Supreme Court who denied review without comment on September 30, 2010.

16  (Ex. I & J).  The state appeals court mandate issued on November 15, 2010.  (Ex. K).

17  **II.     ANALYSIS**

18          Respondents contend that Petitioner's habeas petition is barred as untimely filed.

19  Respondents argue in the alternative that the claims Petitioner has asserted in his habeas

20  petition should be denied on the merits. Respondents acknowledge that all of Petitioner's

21  claims have been properly exhausted.  (Doc. 11 at 6).

22

23

24

25

26  _____

27      [2] The same state court judge presided over Petitioner's guilty plea hearing, his
    sentencing, and his post-conviction proceedings.  (Ex. D's Ex 1, Ex. L & Ex. M).

28

**A.      Timeliness of the Federal Habeas Petition**

Respondents contend that Petitioner's federal habeas petition is time-barred because it was not filed within the applicable one-year time period.  Respondents further argue that Petitioner has not asserted cognizable grounds for equitable tolling.

**1.      The Petition Was Timely Filed**

A one-year period of limitations  applies to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  28 U.S.C. § 2244(d)(1).  Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner must generally file a petition for writ of habeas corpus within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).  In Arizona in a non-capital case where the defendant pleads guilty, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32 of the Arizona Rules of Criminal Procedure.  "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro*, 481 F.3d 710, 717 (9th Cir. 2007).  The judgment of conviction becomes final on the conclusion of the Rule 32 of-right proceeding or the expiration of the time for seeking such review. *Id*. "[T]he period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [90-day] period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition." *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

Petitioner was sentenced on November 7, 2007.  (Ex. B).  He timely filed his PCR notice on December 26, 2007.  (Ex. C).  *See* Rule 32.4(a), Ariz.R.Crim.P., which provides that a plea-convicted defendant must provide the Superior Court with a notice of his intent to file a PCR petition within 90 days of conviction and sentencing in that court.  The PCR trial court filed its ruling denying Petitioner's post-conviction petition on June 23, 2009.  (Ex. F).  The Arizona Court of Appeals denied relief in a Memorandum Decision filed on

1   February 23, 2010. (Ex. H). Petitioner's request for review of this decision was denied by

2   the Arizona Supreme Court on September 30, 2010. (Ex. J). That proceeding remained

3   pending until 90 days later, on Wednesday, December 29, 2010, when the time to seek

4   certiorari review with the U.S. Supreme Court expired. The statute of limitations began to

5   run the following day on December 30, 2010.

6       Respondents contend that Petitioner's federal habeas petition was filed on October 31,

7   2011, the date the document was filed-stamped, and that it is time-barred because it was filed

8   more than one year after the Arizona Supreme Court's denial of review on September 30,

9   2010. (Doc. 11 at 3-4). Respondents argue that Petitioner had until October 1, 2011 to file

10  his federal habeas petition but that he failed to file it until October 31, 2011. (*Id*.). However,

11  Petitioner is entitled to application of the "mailbox rule" in which the court deems the

12  petition filed as of the date that Petitioner signed the petition and gave it to prison authorities

13  to mail. *Houston v. Lack*, 487 U.S. 266, 276 (1988). *See Roberts v. Marshall*, 627 F.3d 768,

14  770 n. 1 (9th Cir. 2010) ("[w]hen a prisoner gives prison authorities a habeas petition or other

15  pleading to mail  to court, the court deems the petition constructively 'filed' on the date it is

16  signed."). Petitioner filed his federal habeas petition on October 24, 2011, the date he avows

17  that he placed it in the prison mailing system. (Doc. 1 at 13). The petition was filed within

18  one year of December 30, 2010 and therefore was timely filed under AEDPA's limitations

19  period.

20  **2.     Petitioner Alternatively is Entitled to Equitable Tolling**

21      The Court, alternatively, considers Petitioner's argument that he is entitled to

22  equitable tolling. (Doc. 1 at 13). For equitable tolling to apply to AEDPA's limitations

23  period, the petitioner must demonstrate (1) that he has been pursuing his rights diligently and

24  (2) that some extraordinary circumstance stood in the way and prevented timely filing.

25  *Holland v. Florida*, 560 U.S. 631, 649 (2010). The extraordinary circumstance must have

26  made it impossible to file the petition on time. *Lakey v. Hickman*, 633 F.3d 782, 786 (9th

27  Cir. 2011). The determination of whether to apply equitable tolling is fact specific and

28                                                - 6 -

1    petitioner "bears the burden of showing that equitable tolling is appropriate." *Espinoza-*
2    *Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).

3        Petitioner asserts equitable tolling based on his placement in prison segregation, his
4    lack of notice of the deadline due to limited information on AEDPA, his *pro se* status, and
5    a miscarriage of justice, claiming he is serving more time than allowed for the crimes of
6    conviction.  (Doc. 1 at 13).  Petitioner's *pro se* status on its own is insufficient to warrant
7    equitable tolling.  *Roy v. Lambert*, 465 F.3d 964, 970 (9th Cir. 2006).  Equitable tolling might
8    be available upon a showing of actual innocence that would result in a manifest injustice.
9    *Mejia v. Pliler*, No. C 00-2316 TEH (PR), 2001 WL 125307, at *3 (N.D. Cal. Feb. 13, 2001)
10   (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  Petitioner's assertion that he is serving
11   more time than allowed for his crimes is not a claim of actual innocence.

12       "[A] *pro se* petitioner's confusion or ignorance of the law" and placement in
13   administrative segregation are not *singular* circumstances that justify equitable tolling.
14   *Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) (confusion and ignorance of the
15   law); *Ramirez v. Yates*, 571 F.3d 993, 998 (9th Cir. 2009) ("ordinary prison limitations" such
16   as administrative segregation and limited access to the law library and copy machine).
17   However, a petitioner who is confined to administrative segregation and deprived of his legal
18   materials may be entitled to equitable tolling if the confinement made it impossible for him
19   to file a timely federal habeas petition and it was an extraordinary circumstance.  *Ramirez*,
20   571 F.3d at 1000-01.  A *pro se* prisoner's lack of access to his legal materials during a prison
21   transfer or temporary relocation can constitute an "extraordinary circumstance" that justifies
22   equitable tolling.  *Espinoza-Matthews*, 432 F.3d at 1027-28; *Lott v. Mueller*, 304 F.3d 918,
23   924-25 (9th Cir. 2002).  To prevail on a claim of equitable tolling, the petitioner must allege
24   a causal connection between the extraordinary circumstance and the untimely filing and
25   demonstrate reasonable diligence in pursuing his federal rights.  *Holland*, 560 U.S. at 653;
26   *Lakey*, 633 F.3d at 784.

27

28

Petitioner's claim of placement in segregation asserted in his habeas petition was not supported by any facts or documents.  However, Petitioner alleges in his Reply that based on representations made by his former post-conviction attorney, he anticipated representation by another attorney.  He further alleges that in the event counsel was not obtained, with the help of another inmate he prepared a § 2254 petition on the standardized form which he anticipated filing before September 30, 2011. (Doc. 13 at 3-4)  Petitioner alleges that this "stand by" federal habeas petition was in his property box labeled "miscellaneous" but that he was abruptly placed in a segregation unit on August 22, 2011 and certain of his property became missing.  (*Id*. at 4).  Petitioner claims that on August 26, 2011, he submitted an inmate letter concerning his missing property and that a corrections official (CO III Bratner) responded that Petitioner's property had "walked away" and he should file a formal grievance.  (*Id*.).  Petitioner has submitted with his Reply his affidavit outlining these circumstances and stating that prison officials lost two-and-one half pages of his inventoried property and included in these lost items was one box of legal work that contained his prepared § 2254 brief.  He states that he spent almost two months in lockup without access to his legal work. (Doc. 13, Long Aff.).  Petitioner also has submitted CO III Brantner's response dated September 6, 2011 noting receipt of Petitioner's inmate letter dated August 26 or 31, 2011 regarding the missing property and suggesting that Petitioner file a formal grievance.  (*Id*., Inmate Letter Response).   Petitioner further has submitted the Inmate Grievance he filed on September 6, 2011 about the missing property which shows that prison officials determined that the loss of Petitioner's property was due to "staff negligence." (*Id*., Inmate Grievance).  Respondents have not contested the information that Petitioner has provided in support of his equitable tolling argument.

Petitioner has not indicated in his documentation that the missing legal work was ultimately located and made available to him. The Court notes with some concern that Petitioner has not provided any information regarding how he filed his federal habeas petition without the missing box of legal work, if that in fact occurred.  Nonetheless, the Court finds

that Petitioner has sufficiently demonstrated extraordinary circumstances based on his placement in segregation and the loss of his legal material by prison officials. Petitioner further has demonstrated reasonable diligence in pursuing his federal rights based on his preparation of a "stand by" habeas petition, the filing of his inmate letter and grievance notifying prison officials about his lost property, and the filing of his federal habeas petition on October 24, 2011. The Court concludes that Petitioner is entitled to equitable tolling. Tolling is justified in such cases because it is "unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal files." *Espinoza-Matthews*, 432 F.3d at 1027 (internal quotation marks and alteration omitted). The Court therefore deems Petitioner's federal habeas petition timely filed. Petitioner's request for an evidentiary hearing on the issue of equitable tolling (Doc. 13 at 3-4) is denied as moot. The Court therefore turns it attention to the merits of Petitioner's claims asserted in his habeas petition.

**B.    Merits Analysis**

**1.    Legal Standards**

This Court's analysis of the merits of Petitioner's claims is constrained by the applicable standard of review. A state prisoner "whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price v. Vincent,* 538 U.S. 634, 638 (2003). In short, AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). Under AEDPA, this Court cannot grant habeas relief unless the state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

1   Under § 2254(d)(1), a federal habeas court may not issue a writ, unless the state court

2   decision was either: (1) "*contrary to* ... clearly established Federal law, as determined by the

3   Supreme Court of the United States," or (2) "*involved an unreasonable application of* ...

4   clearly established Federal law, as determined by the Supreme Court of the United States."

5   *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000) (O'Connor, J., concurring and delivering

6   the opinion of the Court with respect to Part II) (emphasis in original).  A state court decision

7   will be contrary to clearly established federal law if the state court applied the wrong legal

8   rule or applies the correct precedent but on facts indistinguishable from a Supreme Court

9   case, reaches a different result.  *Id*. at 405-06, 412.  A state court decision is an unreasonable

10  application of clearly established federal law when that decision "correctly identifies the

11  governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."

12  *Id*. at 407-08, 412. For a federal court to find a state court's application of Supreme Court

13  precedent "unreasonable," the petitioner must show that the state court's decision was not

14  merely incorrect or erroneous, but "objectively unreasonable."  *Id*. at 409; *Schriro v.*

15  *Landrigan*, 550 U.S. 465,  473-74 (2007); *Visciotti*, 537 U.S. at 25.

16  Under § 2254(d)(2), the federal court reviews purely factual questions that were

17  resolved by the state court.  *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004).  "[T]he

18  question on review is whether an appellate panel, applying the normal standards of appellate

19  review, could reasonably conclude that the finding is supported by the record."  *Id*.

20  Subsection (d)(2) "applies most readily to situations where petitioner challenges the state

21  court's findings based entirely on the state record.  Such a challenge may be based on the

22  claim that the finding is unsupported by sufficient evidence, ... that the process employed by

23  the state court is defective ... or that no finding was made by the state court at all."  *Taylor*

24  *v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004) (internal citation omitted). Under the standard

25  set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based

26  on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)

27  (*Miller-El II*).  A state court decision "based on a factual determination will not be

28

1    overturned on factual grounds unless objectively unreasonable in light of the evidence

2    presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)

3    (*Miller-El I*); *see Taylor v. Maddox*, 366 F.3d at 999.  In considering a challenge under §

4    2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner

5    bears the "burden of rebutting this presumption by clear and convincing evidence."  28

6    U.S.C. § 2254(e) (1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

7         "When applying [AEDPA] standards, the federal court reviews the 'last reasoned

8    decision' by a state court ...."  *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004)

9    (internal citations omitted).  The Court will consider Petitioner's claims in view of these

10   standards.

11   **2.     Grounds One through Four:  Ineffective Assistance of Counsel**

12        In his federal habeas petition, Petitioner asserts the following four grounds for relief

13   in contending that he was represented by ineffective counsel during sentencing (Doc. 1 at 6-

14   11):

15        Ground One: Counsel failed to properly investigate and present available mitigation

16   to the sentencing court that Petitioner's father, grandmother and mother suddenly died when

17   Petitioner was quite young (age 6, 13 and 16) (Doc. 1 at 6);

18        Ground Two: Counsel failed to present evidence in mitigation suggesting that

19   Petitioner may have suffered from a psychological break of some type at the time of the

20   alleged crime spree in which Petitioner apparently believed that he was "possessed by

21   demons" and going to hell after taking drugs following his treatment at a Christian drug

22   rehabilitation center leading to a sense of despair and rebellion (*Id*. at 7);

23        Ground Three: Counsel failed to properly investigate and present readily available

24   mitigation that Petitioner had fallen on a period of misfortune immediately prior to the crime

25   spree in that he lost a good job at a lumber yard he had obtained following his release from

26   prison due to serious injuries he received in an automobile accident that required surgery to

27   reconstruct his wrist and the subsequent denial of disability benefits (*Id*. at 8);

28

1    Ground Four: Counsel failed to point out to the sentencing court that the weapon

2    involved in the alleged offenses was an air pistol that merely looked like a firearm or give

3    appropriate guidance to the court regarding appropriate legal considerations for imposing

4    consecutive sentences as to Counts 2 and 4 in CR 2006-0509 (*Id*. at 9).

5    *State Court Proceedings*:   Petitioner raised Grounds One through Four in his

6    counseled PCR petition filed in state court.   (Ex. D).   During the evidentiary hearing,

7    Petitioner testified that a hollowed-out air pistol was in the truck at the time he took the

8    vehicle and that this pistol looked like a weapon.   (Ex. M at 19).   He admitted that he had

9    stated at sentencing that he had no recollection of the crimes or victims except not returning

10   the truck but testified that he remembered what was in the truck.   (*Id*. at 37-38).   Petitioner

11   acknowledged that his plea agreements regarding the counts of conviction referred to the fact

12   that Petitioner had been armed with a deadly weapon or a simulated deadly weapon.   (*Id*. at

13   20-22). Petition recalled only using an air pistol in committing the crimes.   (*Id*. at 23).   He

14   said he was sad and depressed and felt he had sinned while he was in the hospital before

15   committing the crimes.   (*Id*. at 25-26).

16   Petitioner testified that he thought counsel was a good lawyer and got him a good plea

17   and that he was not trying to get out of his pleas because he admitted to willfully signing the

18   plea bargain and doing "the stuff."   (*Id*. at 28, 29-30).   Petitioner denied that counsel had

19   discussed his presentence report with him.   (*Id*. at 31).   Petitioner claimed that he tried to

20   discuss with counsel the circumstances regarding his mental state and that no gun was

21   involved.   (*Id*. at 32).   Petitioner thought that mitigation information was going to be

22   communicated to the court through counsel and his sister. (*Id*. at 34). Petitioner testified that

23   counsel told him to file his Rule 32 petition because she was overwhelmed with her case

24   load.   (*Id*. at 34-35).   With respect to Petitioner's claim that he felt demon possessed, he had

25   not taken any anti-psychotic medication or been diagnosed with delusions but had gone to

26   the ministry and talked to the chaplain.   (*Id*. at 41-42, 45-46).

27

28

1    Jenny Montano, Petitioner's older sister by six years, testified about the circumstances
2    surrounding the deaths of their father and mother. (Ex. M at 48-51, 62). She said she thought
3    that Petitioner was bipolar and had told pretrial services about his substance abuse and
4    mental health issues and that he needed to be evaluated. (*Id*. at 53-55). Montano stated that
5    she had discussed doing a mitigation hearing with Petitioner's attorney but that counsel
6    cancelled their meeting to discuss the matter and never rescheduled. (*Id*. at 58-62). Montano
7    testified that she was like Petitioner's mother when she was 12 years of age and that she
8    obtained legal custody of him when she became 18. (*Id*. at 62). She admitted that Petitioner
9    had never been diagnosed as bipolar and that she had spoken several times over the phone
10   with his counsel. (*Id*. at 67).

11   Petitioner's attorney Bobbi Berry testified that his sister may have mentioned that
12   Petitioner had some mental health issues, such as ADHD. (Ex. M at 76). Counsel requested
13   to present mitigation but she was not sure why the hearing was vacated, possibly because
14   letters from Petitioner's family were submitted to the court. (*Id*. at 85-87).[3] Counsel testified
15   that she spent a significant period of time on the phone with Petitioner's sister talking about
16   the case, including mitigation. (*Id*. at 89-90, 100). Counsel acknowledged that she did not
17   tell the sentencing court that the firearm was an air pistol. (*Id*. at 95-96, 101). Counsel
18   recalled that Petitioner's sister told her that Petitioner had grown up with a sense of
19   abandonment because their parents had died early on but she did not recall any mention of
20   physical abuse. (*Id*. at 98-99). Counsel testified that her concern was the crime spree events
21   and that witnesses described the use of a gun in such a way that it did not indicate an air
22   pistol. (*Id*. at 103-04). Counsel said that she did not want to get into a discussion with the
23   sentencing court over aggravating factors and that the court did not include use of a deadly
24   weapon or dangerous instrument as an aggravating factor. (*Id*. at 104). Counsel testified that

25

26
27   [3] Defense counsel stated at the plea hearing that there was "a likelihood" Petitioner
     would present mitigation evidence to the court. (Ex. D's Ex. 1 at 21).

28                                          - 13 -

1   she understood under Arizona law that an air pistol is a firearm and a deadly weapon.  (*Id*.

2   at 115).  Counsel also understood that the court receives not only a presentence report for an

3   individual case number but all of the past presentence reports for all prior Arizona or Pima

4   County cases including juvenile history.  (*Id*. at 119-20).  Counsel testified that she generally

5   reviews these reports as well.  (*Id*. at 120).

6          The PCR trial court determined following the evidentiary hearing that defense counsel

7   had not provided ineffective assistance, relying on *Strickland v. Washington*, 466 U.S. 668

8   (1984), and Arizona case law.  (Ex. F at 1-5).  The court found that defense counsel had

9   asked the sentencing court to consider Petitioner's "unstable and traumatic childhood." (Ex.

10   F at 4).  It further found that even if counsel had brought to the sentencing court's attention

11   Petitioner's job loss, hand injury, and mental state at the time of the crimes, these

12   circumstances would not have affected the court's decision.  (*Id*.).  Petitioner had mentioned

13   to the sentencing court his belief that he had been demon-possessed and this information was

14   contained in the presentence report.   (*Id*.).   The sentencing court also was aware of

15   Petitioner's alleged abusive childhood and discussed it as a mitigating factor.  (*Id*. at 5). The

16   PCR court noted that counsel had spoken at length with Petitioner's sister over the phone

17   concerning mitigation and that the sentencing court had reviewed Petitioner's previous

18   presentence reports.  (*Id*.).

19          Petitioner presented these four claims of ineffective assistance to the Arizona Court

20   of Appeals, which adopted the trial court's ruling and denied relief.  (Ex. G & H).

21   Petitioner's  assertion of these claims to the Arizona Supreme Court was denied without

22   comment.  (Ex. I & J).

23          The United States Supreme Court held in *Strickland v. Washington,* a capital

24   sentencing case*,* that to establish ineffective assistance of counsel, a defendant must show

25   that "counsel's representation fell below an objective standard of reasonableness" and that

26   he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 687-88.  The

27   Supreme Court in *Strickland* "expressly declined to 'consider the role of counsel in an

28                                                                    - 14 -

1   ordinary sentencing, which . . . may require a different approach to the definition of

2   constitutionally effective assistance.'" *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th

3   Cir. 2005) (quoting *Strickland*, 466 U.S. at 686). The Supreme Court has not since decided

4   what standard should apply to an ineffective assistance of counsel claim in the context of

5   noncapital sentencing. *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006). As a result,

6   there is no clearly established federal law on the issue. *See Cooper-Smith,* 397 F.3d at 1244,

7   *Davis,* 445 F.3d at 1158. Petitioner has not established that the state court's ruling on his

8   ineffective assistance of counsel claims was contrary to, or an unreasonable application of,

9   clearly-established federal law as determined by the Supreme Court. *See Alcarez-Guerrero*

10  *v. Ryan*, No. CV-10-750-TUC-JGZ, 2013 WL 5498247, at *3 (D. Ariz. Oct. 1, 2013)

11  (finding that the habeas petitioner could not establish that the Arizona court's ruling on his

12  claim that trial counsel was ineffective in failing to present mitigating evidence at sentencing

13  was contrary to, or an unreasonable application of, clearly established Supreme Court

14  precedent; "[s]ince *Strickland*, the Supreme Court has not decided what standard should

15  apply to ineffective assistance of counsel claims in the noncapital sentencing context").

16      In this case, Petitioner pleaded guilty to the charges. When a defendant who has

17  pleaded guilty brings an ineffective assistance claim, he must "show that there is a reasonable

18  probability that, but for counsel's errors, he would not have pleaded guilty, and would have

19  insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Here, however,

20  Petitioner and his counsel both acknowledged during the evidentiary hearing that Petitioner

21  was not seeking to void his guilty plea. (Ex. M at 5, 29-30). Petitioner thus makes no direct

22  or indirect argument that "but for counsel's errors, he would not have pleaded guilty and

23  would have insisted on going to trial." *Hill*, 474 U.S. at 58. Petitioner is not entitled to

24  habeas relief under § 2254(d)(1) with respect to Grounds One through Four.

25      In resolving Petitioner's claims, the state court applied *Strickland*. The Ninth Circuit

26  has stated that "even though the *Strickland* standard does not by necessity apply to the

27  noncapital sentencing context, the [state]...courts were nonetheless free to adopt that standard

28

1    for use in this context." *Davis,* 443 F.3d at 1158.  To any extent that the *Strickland* standard

2    applies to Petitioners ineffective assistance of counsel claims, Petitioner has not established

3    that counsel's representation fell below an objective standard of reasonableness or that he

4    was prejudiced by counsel's deficient performance.  An ineffective assistance claim must

5    satisfy both prongs of *Strickland*.  *Strickland*,  466 U.S. at 697 ("if it is easier to dispose of

6    an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should

7    be followed").  A petitioner must affirmatively prove prejudice.  *Id*. at 693.  To demonstrate

8    prejudice, he "must show that there is a reasonable probability that, but for counsel's

9    unprofessional errors, the result of the proceeding would have been different.  A reasonable

10   probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

11   Petitioner bears the burden of showing the state court applied *Strickland* to the facts of his

12   case in an objectively unreasonable manner. *See Bell v. Cone,* 535 U.S. 685, 698-99 (2002).

13          *Ground One*:  With respect to Ground One regarding the deaths in Petitioner's family,

14   defense counsel asked the sentencing court to consider in mitigation Petitioner's unstable and

15   traumatic childhood. (Ex. L at 12).  The sentencing court commented that it had "considered

16   the childhood you've had as you were growing up." (*Id*. at 15).  The PCR trial court found

17   that defense counsel had asked the trial court to consider Petitioner's "unstable and traumatic

18   childhood." (Ex. F at 4).  The PCR trial court also pointed out that Petitioner's presentence

19   report relevant to the January 2006 crime spree convictions stated: "This report supplements

20   and updates the appended prior Presentence Report and Addendum." The PCR trial court

21   indicated that the previous presentence reports had been provided to and reviewed by the

22   court prior to sentencing as is the court's practice.  (Ex. F at 5; see Ex. D's Ex. 5 at 1).

23   Petitioner's previous presentence report in CR-20031765/CR-20032559 contained

24   information about the deaths of his father, grandfather and mother. (Ex. D's Ex. 7 at 3-4).[4]

25   _____

26        [4] Petitioner's presentence report relevant to CR-20031765/CR-20032559 stated that
     Petitioner's grandparents moved from Nevada to Tucson to help care for him and his sister
27   after his father's death. (Ex. D's Ex. 7 at 4).  It further stated that Petitioner's grandfather

28                                              - 16 -

1   Petitioner suffered no prejudice from counsel's alleged failure to more specifically mention
2   at the sentencing hearing the circumstances regarding the deaths in his family.

3       *Ground Two*:  With respect to Ground Two and Petitioner's allegation that he may
4   have suffered a break of some type and believed he was demon-possessed, Petitioner told the
5   court at sentencing regarding his criminal behavior that he had no recollection of most of the
6   events, that he believed there was more to it than his use of drugs and blackouts, and that he
7   believed "there was some demonic possession involved in it."  (Ex. L at 9).  Petitioner's
8   assertion of being "demon-possessed" was also included in his presentence report which the
9   sentencing court read and considered prior to the hearing.  (Ex. D's Ex. 5 at 2; Ex. L at 5).
10  The sentencing court therefore considered Petitioner's claim of demonic possession as the
11  PCR court found.  During the evidentiary hearing, Petitioner testified that he was not taking
12  any anti-psychotic medication, he had not been diagnosed with delusions of any type, and
13  he had not sought mental health treatment at the Department of Correction, preferring instead
14  to go "to the ministry" and talk with the chaplain.  (Ex. M at 41-42, 46).  Petitioner's sister
15  acknowledged that he had not been diagnosed as bipolar or with any kind of psychotic
16  disorder.  (Ex. M at 67).  Petitioner has not demonstrated prejudice due to counsel's failure
17  to present to the sentencing court Petitioner's claim of a possible break and demonic
18  possession.

19      *Ground Three*:  With respect to Petitioner's allegations in Ground Three that he
20  suffered a period of misfortune that included a job loss and hand injury prior to his criminal
21  activity, these circumstances also were discussed in his presentence report relevant to the
22  January 2006 crime spree:

23

24  _____

25  passed away in 1994 and his mother died in 1997.  (*Id.*)  Petitioner's sister Jenny Montano
    testified at the evidentiary hearing that Petitioner's grandmother accompanied her when she
26  went downtown to meet with defense counsel.  (Ex. M at 60-61).  The record contains
    Petitioner's unsigned affidavit in which he refers to the death of his grandfather as a loss he
27  suffered as a minor.  (Ex. D's Ex. 6, ¶ 7).

28

[Petitioner] worked for a lumber company for one week before he sustained an injury to his left wrist in a car accident in April 2005. The defendant underwent surgery but was unable to grasp and lift objects with his left hand. As a result, he filed a lawsuit and applied for disability benefits. His application for benefits was denied. He said the lawsuit has been 'dropped' as a result of his arrest for the instant offenses.

The defendant relapsed shortly after the accident. After he recognized the negative impact of his 'crack' cocaine use, he entered a Christian-based residential program in November 2005. The same month he suffered a heart attack and was hospitalized. Following his discharge from the hospital, he relapsed and returned to the hospital. According to defendant, he was discharged after he signed an agreement to enter a residential drug treatment program. He failed to do so. A few days later, he committed the instant offenses.

(Ex. D's Ex. 5 at 3-4). The trial court stated at the beginning of the sentencing hearing that it had read and considered Petitioner's presentence report. (Ex. L at 5). Although defense counsel did not specifically mention Petitioner's job loss or hand injury during sentencing, the information was considered by the sentencing court. The PCR trial court found that the sentencing court's knowledge of Petitioner's job loss and hand injury would not have made any difference in the sentencing determination. Petitioner has not shown resulting prejudice from counsel's alleged omission.

*Ground Four*: As for Ground Four, Petitioner's contention that counsel failed to argue that Petitioner had allegedly used only an air pistol in committing the crimes is, in part, a cognizable federal claim to the extent that he argues that the state court's factual findings on the issue were erroneous. Petitioner must establish that the state court's ruling was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (2). Petitioner's underlying claim that he used only an air gun in committing the crimes is not supported by the record.

Petitioner admitted in his plea agreements that as to each count of conviction he had been armed with a deadly weapon or a simulated deadly weapon. (Ex. D's Ex. 2 & 3). Petitioner acknowledged this fact during the evidentiary hearing. (Ex. M at 35-38). He acknowledged during the plea hearing that he had read and understood the plea agreements and that he had signed both agreements. (Ex. D's Ex. 1 at 13-14). The sentencing court

commented that it had rarely seen circumstances of a crime spree like that committed by Petitioner, that it was fortunate that no one was hurt due to the potential for violence, and that a firearm had been displayed or actively used. (Ex. L at 14-15). The court considered as aggravating circumstances that Petitioner had past felony convictions, that there were multiple victims, that Petitioner had an accomplice, and that Petitioner committed some acts for pecuniary gain. (*Id*. at 15). In deciding to impose the presumptive terms on all counts and to run certain sentences consecutively, the court stated that it had given great weight to the great risk that Petitioner posed to society. (*Id*. at 16).

The PCR trial court discussed the information in Petitioner's presentence report that Petitioner tossed an air gun from the vehicle and "chambered a round" in a hand gun as observed by the victim and that it was aware at sentencing that Petitioner may have used an air gun and/or an actual firearm in the commission of the offenses. (Ex. F at 6, referring to Petitioner's presentence report in CR-20061002/CR-20060509 [Ex. D's Ex. 5 at 2]). The PCR court pointed out, however, that the sentences imposed were also based on the risk Petitioner posed to the community and events that included a car hijacking, a high-speed chase, and conduct placing the public at risk. (Ex. F at 6). In rejecting Petitioner's claim that counsel was ineffective for not clarifying that the weapon was not a functional firearm, the Arizona Court of Appeals noted the information in Petitioner's presentence report regarding the guns and commented that there was no evidence in the record to prove that the firearm was inoperable and would not meet the statutory definition of a firearm in A.R.S. § 13-105(19) or that it was the only weapon used. (Ex. H at 2 n. 1).[5]

---

[5] At the time of the state court of appeals decision, A.R.S. § 13-105(19) defined "firearm" as "any loaded or unloaded handgun, pistol, revolver, rifle, shotgun or other weapon that will or is designed to or may readily be converted to expel a projectile by the action of expanding gases, except that it does not include a firearm in permanently inoperable condition."

1    The record evidence therefore does not support Petitioner's factual claim that counsel

2    was ineffective for not pointing out to the sentencing court that he had only used an air gun

3    in committing the crimes. Petitioner has not sustained his burden of showing by clear and

4    convincing evidence that the state court's factual findings were not correct.

5        In sum, Petitioner has not demonstrated that he received ineffective assistance of

6    counsel during sentencing.  The state court's rejection of these claims was not objectively

7    unreasonable.  Nor did the state court proceeding result in a decision that was based on an

8    unreasonable determination of the facts in light of the evidence presented during that

9    proceeding.  Petitioner's Grounds One through Four are denied.

10   **3.    Grounds Five and Six:  Sentencing Error**

11       Petitioner asserts the following claims of sentencing error in Grounds Five and Six

12   of his federal habeas petition:

13       Ground Five: Petitioner's due process rights under the Fifth and Fourteenth

14   Amendments were violated when the sentencing court erred in sentencing Petitioner to

15   consecutive sentences because it failed to follow applicable Arizona law under *State v.*

16   *Garza*; (Doc. 1 at 10);  and

17       Ground Six:  Petitioner's due process rights under the Fifth and Fourteenth

18   Amendments were violated when the sentencing court (a) erred in considering erroneous

19   information concerning the existence of an actual firearm during the crime spree; (b) erred

20   by not conducting an adequate investigation through consideration of an earlier presentence

21   report in CR-20031765 and CR-20032559 that contained vital information; and (c) erred by

22   improperly weighing available mitigation and aggravation.  (*Id*. at 11).

23       *Ground Five*:  With respect to Ground Five and Petitioner's claim that the trial court

24   erred based on *State v. Garza* in imposing consecutive terms, "federal habeas relief is not

25   available for alleged errors in the interpretation and application of state law, including a

26   state's statute regarding sentencing."  *Taylor v. Ryan*, No. CV-13-00853-PHX-GMS, 2014

27   WL 1713759, at *3 (D. Ariz. May 1, 2014) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68

28

1   (1991); *Hubbart v. Knapp*, 379 F.3d 773, 780 (9th Cir. 2004)). *See also*, *Souch v. Schaivo*,

2   289 F.3d 616, 623 (9th Cir. 2002) ("neither an alleged abuse of discretion by the trial court

3   in choosing consecutive sentences, nor the trial court's alleged failure to list reasons for

4   imposing consecutive sentences, can form the basis for federal habeas relief"). As Petitioner

5   alleges "that his sentences violated his right to due process because they were improperly

6   imposed as consecutive sentences under Arizona law, he has not stated a cognizable claim

7   for federal habeas relief." *Taylor v. Ryan*, 2014 WL 1713759, at *3 (citing *Beaty v. Stewart*,

8   303 F.3d 975, 986 (9th Cir. 2002) ("petitioner's argument that 'the trial court improperly

9   imposed consecutive sentences in violation of Arizona law' is 'not cognizable in federal

10  habeas proceedings'")). Moreover, Petitioner's Ground Five is conclusory and not supported

11  by any factual discussion. A petitioner's conclusory allegations unsupported by a statement

12  of specific facts do not warrant federal habeas relief. *Jones v. Gomez*, 66 F.3d 199, 204-05

13  (9th Cir. 1995); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

14          To the extent that Ground Five is cognizable, the Arizona Supreme Court held in *State*

15  *v. Garza* that the trial court abuses its discretion at sentencing when it fails to properly

16  exercise its discretion not to impose consecutive sentences on multiple charges or does not

17  realize the extent of the discretion available in imposing sentence. It specifically held that

18  A.R.S. § 13-708 created no presumption in imposing consecutive sentences. *Garza*, 962 P.2d

19  at 901-03. Section 13-708 also did not impose any restrictions on a trial court's discretion

20  in choosing between consecutive or concurrent sentences. Rather, it acts as a default statute

21  solely applicable in the event that a judge fails to designate a particular structure at the time

22  of sentencing. *State v. Ward*, 26 P.3d 1158, 1159-60 (Ariz. App. 2001) (citing *Garza*, 962

23  P.2d at 901).[6]

24  _____

25          [6] In 2007, A.R.S. § 13-708(A) generally provided that if multiple sentences of

26  imprisonment are imposed on a person at the same time, the sentence or sentences shall run

    consecutively unless the court expressly directed otherwise in which case the court shall state

27  on the record the reason for its sentence.

28                                          - 21 -

1    Petitioner raised the claim asserted in Ground Five in his state post-conviction

2    proceedings. (Ex. D). The PCR trial court rejected it, finding that there was no indication

3    that the sentencing court had abused its discretion in imposing consecutive sentences. (Ex.

4    F at 6.) It found that the sentencing court "articulated its reasons for imposing consecutive

5    sentences, pointed out several aggravating factors, and set two of petitioner's sentences to

6    run consecutively because of the great risk he posed to the community." (*Id*.). The state

7    court of appeals granted review but denied relief. (Ex. H).

8    Based on this Court's review of the proceedings, the state court's findings are

9    supported by the record. Petitioner's plea agreement in CR-20060509 noted the parties'

10   agreement that the sentences imposed on Counts Six and Seventeen would run concurrent

11   to any sentence imposed on Counts Two and Four and that there was no agreement regarding

12   whether Counts Two and Four would run concurrent or consecutive. (Ex. D's Ex. 2 at 2, ¶

13   II). The trial court ordered the sentences on Counts Two and Four in CR-20060509 to run

14   consecutively based on the "great risk" Petitioner posed to society. (Ex. L at 16).

15   Petitioner's due process rights were not violated based on the state court's imposition of

16   consecutive sentences. Ground Five is rejected on the merits.

17   *Ground Six*: As for Ground Six, Petitioner raised the three subclaims in his PCR

18   petition and they were rejected by the trial court. (Ex. D & Ex. F). The state court of appeals

19   denied relief. (Ex. H). As with Ground Five, Petitioner's claims of sentencing error are not

20   cognizable for federal habeas relief. To the extent they are cognizable, the claims in Ground

21   Six are without merit

22   With respect to Ground Six(a), as previously found in this Report &

23   Recommendation, the record does not support Petitioner's claim that the state court

24   sentenced him based on a non-existent firearm. The circumstances showed that the air pistol

25   was not the only weapon Petitioner used in the criminal activity. There was no evidence that

26   the weapon was inoperable.

27

28

1    Regarding Ground Six(b), Petitioner's presentence report relevant to the January
2    2006 crimes stated that it "supplement[ed] and update[d] the appended prior Presentence
3    Report and Addendum" and then discussed Petitioner's 2003 convictions. (Ex. D's Ex. 5 at
4    1). As the PCR trial court found, the sentencing court considered Petitioner's previous
5    presentence reports in his criminal cases. (Ex. D's Ex. 7; Ex. F at 5 ["the previous pre-
6    sentence reports were provided to the Court, and the Court reviewed them prior to
7    sentencing, as is the Court's practice").

8    As for Ground Six(c), the sentencing court summarized both the aggravating and
9    mitigating circumstances it considered before imposing sentence, as generally noted by the
10   PCR trial court. (Ex. L at 15; Ex. F at 2, 6). Petitioner's conclusory allegation that the
11   sentencing court did not properly consider aggravating and mitigating circumstances
12   therefore is refuted by the record. Moreover, a defendant in a non-capital case has no federal
13   constitutional right to present mitigating evidence. *See United States v. LaFleur*, 971 F.2d
14   200, 211 (9th Cir. 1991) (rejecting claim that the Constitution guarantees a right to present
15   mitigating evidence to the sentencing court) (citing *Harmelin v. Michigan*, 501 U.S. 957,
16   994-95 (1991)). Which "mitigating factors" must be considered and to what extent are
17   matters of state law, not Fourteenth Amendment due process. *See Capes v. Ryan*, No. CV
18   11-507-SMM (MHB), 2012 WL 465447, at *5 (D. Ariz. Feb. 14, 2012) (habeas petitioner's
19   claim that trial court failed to properly balance aggravating and mitigating factors at
20   sentencing raised a question of application of state sentencing law, not a federal claim).

21   Petitioner's three subclaims asserted in Ground Six do not entitle him to habeas relief.

22   **III.   RECOMMENDATION**

23   Based on the foregoing, the Magistrate Judge recommends that the District Court,
24   after its independent review, enter an Order: (1) finding that Petitioner's federal habeas
25   petition was timely filed; (2) denying Petitioner's Grounds One through Four on the merits;
26   and (3) finding that Grounds Five and Six are not cognizable grounds for federal habeas

27

28
                                          - 23 -

relief but if considered as cognizable claims, denying Grounds Five and Six on the merits.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2).  No replies to objections shall be filed unless leave is granted from the District Court to do so. If objections are not timely filed, they may be deemed waived.  The parties are advised that any objections filed are to be identified with the following case number: **CV-11-0686-TUC-FRZ.**

DATED this 14th day of August, 2014.

**CHARLES R. PYLE**
**UNITED STATES MAGISTRATE JUDGE**

- 24 -